**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN COOK,** | : | **No. 3:15cv279** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CENTRAL SUSQUEHANNA** | : | |
| **OPPORTUNITIES, INC.,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

This employment discrimination matter arises from Plaintiff Stephen Cook's (hereinafter "plaintiff") employment as the Chief Financial Officer for Defendant Central Susquehanna Opportunities, Inc. (hereinafter "defendant" or "CSO"). Plaintiff asserts CSO discriminated against him based on his age, disability and sex. Before the court for disposition is CSO's motion for summary judgment. For the reasons that follow, the court will grant in part and deny in part CSO's motion.

## Background

Plaintiff was born on July 23, 1959, and began working as an employee in CSO's finance department on April 24, 2000. (Doc. 31-23, Ex. W, Pl.'s Driver's License; Doc. 31-1, Ex. A, Def.'s Answer to PHRC Compl. (hereinafter "Def.'s PHRC Answer") ¶ 5). On December 12, 2004, CSO promoted plaintiff to Chief Financial Officer (hereinafter "CFO"). (Def.'s PRHC Answer ¶ 5; Doc.

25, Def.'s Concise Stmt. of Facts (hereinafter "SOF") ¶ 1).  Plaintiff served as defendant's CFO until his termination on March 15, 2013.  (Doc. 31-2, CSO's Termination Letter dated March 12, 2013).

As defendant's CFO, plaintiff performed several job duties including: audit resolution, preparing financial statements and budgets, approving financial reports, maintaining CSO's general ledger and managing CSO's financial department.  (Doc. 41-2, Dep. of Stephen Cook (hereinafter "Cook Dep") at 199-200).  Plaintiff also established a grant procurement system, allowing CSO to research funding opportunities.  (Id. at 67).  Additionally, plaintiff orchestrated a request for proposal process to obtain cost quotes from various health care providers to reserve funding and cut expenses.  (Id. at 125-26).

In June 2012, plaintiff suffered a stroke.  (SOF ¶ 2).  Following his stroke, plaintiff took a medical leave of absence and returned to work on August 27, 2012, without work restrictions or limitations.  (Id. ¶ 11).  During plaintiff's medical leave, CSO's Chief Executive Officer Barry McLaughlin (hereinafter "McLaughlin") placed Melissa Bozza, age thirty-nine (39), in charge of CSO's fiscal department.[1]  (SOF ¶ 25; Cook Dep. at 183-84; Doc.

---

[1]  In 2007, Barry McLaughlin became CSO's Chief Executive Officer, which included supervising plaintiff.  (SOF ¶ 7).

39, Dep. of Barry McLaughlin (hereinafter "McLaughlin Dep.") at 66-67, 109;

Doc. 31-17, Ex. Q, Def.'s Answer to Pl.' First Set of Interrogs. ¶ 13).

Plaintiff testified that, after his stroke, he began to experience age,

disability and gender discrimination against him in the workplace.  (SOF ¶ 21).

Specifically, McLaughlin stopped having open discussions with him.  (Id. ¶ 22).

McLaughlin also ceased talking with plaintiff regarding succeeding him as

defendant's CEO.  (Cook Dep. at 143-44).  Additionally, McLaughlin became

very cold toward plaintiff and no longer valued plaintiff's opinion.  (Id.)

Defendant disputes that any of its staff treated plaintiff differently after

plaintiff's return from medical leave.

Plaintiff continued working as defendant's CFO until his termination in

March 2013.  (Doc. 31-2, CSO's Termination Letter dated March 12, 2013).

CSO did not fill the CFO position following plaintiff's termination.  (SOF ¶ 27).

Rather, Melissa Bozza assumed the CFO duties.  (SOF ¶ 25).

On December 29, 2014, plaintiff filed a four-count complaint in the United

States District Court for the Eastern District of Pennsylvania.  (Doc. 1, Compl.).

Count I alleges CSO discriminated against plaintiff because of his disability in

violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

(hereinafter "ADA").  (Id. ¶¶ 34-37).  Count II states an age discrimination

claim under the Age Discrimination in Employment Act (hereinafter "ADEA"),

3

29 U.S.C.A. § 621 *et seq.*  (Id. ¶¶ 38-40).  Count III avers a gender discrimination claim against CSO pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (hereinafter "Title VII").  (Id.  ¶¶ 41-44).  Count IV asserts disability, age and gender discrimination claims against CSO under Pennsylvania's Human Relations Act, 43 PA. STAT. ANN. § 951, *et seq*. (hereinafter "PHRA").  (Id. ¶¶ 45-48).

On February 6, 2015, the United States District Court for the Eastern District of Pennsylvania granted the parties' joint motion to transfer this matter to the United States District Court of the Middle District of Pennsylvania.  (Doc. 10).  The court held a case management conference on March 20, 2015, (Doc. 18), and at the conclusion of discovery, CSO moved for summary judgment on all of plaintiff's claims (Doc. 23).  The parties briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As this case is brought under various federal statutes for unlawful employment discrimination, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).   "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.   Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).   The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.   Anderson, 477 U.S. at 248 (1986).   A fact is material when it might affect the outcome of the suit under the governing law.   Id.   Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to

5

admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

CSO's motion for summary judgment raises the following issues: 1) plaintiff's age discrimination claim fails on the merits; 2) plaintiff's disability discrimination claim fails on the merits; and  3) plaintiff's gender discrimination claim fails on the merits.  The court will address these issues separately.

**I. Age Discrimination**[2]

CSO moves for summary judgment on plaintiff's age discrimination claim.  Plaintiff counters that he can state a *prima facie* age discrimination claim and genuine issues of material fact regarding pretext preclude summary judgment.  After a careful review, the court agrees with the plaintiff.

Plaintiff brings an age discrimination claim pursuant to the ADEA, which

---

[2]  Our analysis is the same for the plaintiff's PHRA age discrimination claim, as the PHRA and ADEA are evaluated under the same standards. Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir. 2010).

makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).  The ADEA's prohibition is designed to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," such as the belief that "productivity and competence decline with old age."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  The ADEA therefore commands employers not to use age as a proxy for an employee's actual characteristics, but rather "to evaluate older employees on their merits."  Id. at 611 (alteration and internal quotation marks omitted).

To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009).  A plaintiff can satisfy this burden in one of two ways.  First, a plaintiff may demonstrate with direct evidence that age was the "but-for" cause of the employment action.  Anderson v. Consol. Rail Corp., 297 F.3d 242, 247-48 (3d Cir. 2002).  Second, a plaintiff may use the familiar burden shifting framework announced in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973) to establish age discrimination with circumstantial evidence.  Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009)).  Here, plaintiff argues that he can establish age discrimination with circumstantial evidence.

Thus, the burden shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) applies.  Smith, 589 F.3d at 684.

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination.  Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)). Satisfying the *prima facie* elements creates an "inference of unlawful discrimination."  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995)). The elements of a *prima facie* case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive. Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).

The United States Supreme Court has indicated the *prima facie* case is not "intended to be rigid, mechanized, or ritualistic."  Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).  Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999).

8

Once the plaintiff establishes this *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action.  If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was pretext for age discrimination."  Smith, 589 F.3d at 689-90.  The court will address each step of this burden shifting framework in turn.

### A.  Plaintiff's *prima facie case*

The defendant does not contest the first three elements of plaintiff's *prima facie* case.  Rather, the defendant argues that a "sufficiently younger," "similarly situated" individual did not replace plaintiff for two reasons.  First, the defendant did not fill the CFO position after it terminated plaintiff's employment.  Second, the defendant eliminated the CFO position from its corporate structure three months after plaintiff's termination.  Thus, according to the defendant, a "sufficiently younger," "similarly situated" individual did not replace plaintiff.

Plaintiff contends that the defendant eliminated the CFO position at the time of plaintiff's termination, and therefore, the court should apply the standard articulated in so-called "reduction in force" cases.  The court agrees

with the plaintiff and will construe plaintiff's termination as a reduction in force.[3]

In the reduction in force context, the Third Circuit Court of Appeals has stated that to establish the fourth element of a *prima facie* case under the ADEA, "a plaintiff must demonstrate that the employer retained a sufficiently younger similarly situated employee." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 301 (3d Cir. 2004).  This retained individual, however, "does not need to be situated identically to satisfy the fourth element of plaintiff's *prima facie* case . . . ." Id. at 305.  Rather, when the plaintiff holds a "unique position" within the corporate structure, the employee may satisfy the fourth element of the *prima facie* case "by demonstrating that the remaining responsibilities of [his] position were transferred to persons outside the protected class." See Torre v. Casio, Inc., 42 F.3d 826, 830-31 (3d Cir. 1994) (reformulating the fourth element of the *prima facie* case in light of the

---

[3]  CSO asserts it did not eliminate the CFO position at the time of plaintiff's termination.  Rather CSO furloughed plaintiff on March 12, 2013, effective March 15, 2013.  (Doc. 31-2, Termination Letter dated March 12, 2013).  An email from CSO's executive director to all staff and board members on March 15, 2013, however, states that CSO "is eliminating the CFO position." (Doc. 39-26, McLaughlin Email dated March 15, 2013). Moreover, CSO's board of directors took the procedural steps to officially change its organizational structure and eliminate the CFO position in June 2013–a mere three months after plaintiff's termination.  (Doc. 39, Dep. of Barry McLaughlin at 89-90).  Thus, viewing this evidence in the light most favorable to plaintiff, the court will construe plaintiff's termination as a reduction in force.

10

circumstances of that case).

In the instant case, plaintiff was fifty-three (53) years old at the time of his termination.  (SOF ¶¶ 1, 3; Doc. 31-23, Ex. W, Pl.'s Driver's License). Plaintiff held a unique position as the only CFO at defendant's organization. Further, the defendant redistributed most of his responsibilities to a younger employee–Melissa Bozza, age 39.  (SOF ¶ 25; McLaughlin Dep. at 66-67, 109; Doc. 31-17, Ex. Q, Def.'s Answer to Pl.' First Set of Interrogs. ¶ 13). Thus, plaintiff has established that defendant transferred most of his responsibilities to a person outside the protected class, which raises an inference that a "sufficiently younger," "similarly situated" individual replaced him.  Torre, 42 F.3d at 830-31.  Ergo, the court will employ the rest of the balancing test.

### B. Defendant's nondiscriminatory explanation

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action."  Smith, 589 F.3d at 689-90.  This burden is "'relatively light'" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason.  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.

1994)); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294,

302 (3d Cir. 2012) (describing this step as a "minimal burden").  Defendant has

clearly met its burden here.

Defendant provides two reasons for terminating plaintiff's employment.

First, defendant terminated plaintiff because its funding declined by almost

45% between 2011 and 2014.  (SOF ¶ 4, Doc. 31-2, Ex. B, Termination Letter

dated 3/12/13).  Second, plaintiff's poor performance contributed to his

termination.  (Doc. 24, Pl.'s Performance Review at 44-48).  Thus, the record

evidence establishes legitimate, non-discriminatory reasons for plaintiff's

termination.

### C.  Pretext

Having established a legitimate reason for plaintiff's termination, the

burden of production shifts back to plaintiff to "provide evidence from which a

factfinder could reasonably infer that the employer's proffered justification is

merely a pretext for discrimination."  Burton, 707 F.3d at 426; see also Doe v.

C.A.R.S. Prot. Plus, Inc., 527 F.3d at 364 (explaining that, "to defeat a motion

for summary judgment, [the plaintiff] must show that the employer's articulated

reason was a pretext for intentional discrimination").

To establish pretext, plaintiff must "point to some evidence, direct or

circumstantial, from which a factfinder could reasonably either (1) disbelieve

the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes, 32 F.3d at 764.  The first Fuentes prong is relevant here.

Under this test, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  Id. at 765 (citation and internal quotation marks omitted).  In so doing, he must "do more than show that [the defendant] was wrong or mistaken in deciding to lay him off.  He must present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision."  Tomasso, 445 F.3d at 706 (internal citation and quotation marks omitted); see also Keller, 130 F.3d at 1109 (explaining that a plaintiff must demonstrate that the employer's proffered reason was wrong, "but that it was so plainly wrong that it cannot have been the employer's real reason").

In the instant case, plaintiff has demonstrated three inconsistencies and contradictions regarding defendant's nondiscriminatory reasons for his termination.  First, defendant's CEO explained to certain board members that plaintiff was not terminated because of a decrease in funding or poor

13

performance.  Rather, defendant's CEO felt plaintiff "wasn't the same" after

suffering a stroke.  (McLaughlin Dep. at 7, 14; Doc. 36, Dep. of Anthony Rosini

(hereinafter "Rosini Dep.") at 16; Doc. 37, Dep. of Gene Welsh (hereinafter

"Welsh Dep.") at 8).  When viewed in the light most favorable to the plaintiff,

this statement may imply the CEO did not want to manage an older employee

recovering from a stroke.  Instead, the CEO used plaintiff's stroke as the

actual reason to terminate an older employee and transfer his job duties to an

employee fourteen (14) years younger than plaintiff.

    Second, defendant's non-discriminatory reasons for plaintiff's termination

changed during the pendency of this action.  Initially, on March 12, 2013,

defendant stated it terminated plaintiff because of a decrease in funding.

(SOF ¶ 4, Doc. 31-2, Ex. B, Termination Letter dated 3/12/13).  Defendant's

main grantor, however, contacted the defendant on March 22, 2013, and

indicated that "current funding appears to be sufficient to cover administrative

costs through June 30, 2013," including plaintiff's salary.  (Doc. 31-16, Cent.

Pa. Workforce Dev. Corp. Letter dated 3/22/13).  Subsequent to receiving this

letter, CSO appears to have changed its reason for plaintiff's termination to

poor work performance.  (SOF ¶¶ 3, 12).  Therefore, a reasonable jury could

conclude that defendant's evolving reasons for plaintiff's termination are

merely pretext for terminating plaintiff and transferring his job duties to a

14

younger employee.

Finally, defendant's most recent justification of plaintiff's termination, poor performance, is potentially unfounded.  Plaintiff satisfactorily performed his job for twelve (12) years prior to his stroke in July 2012.  (Doc. 31-5, Pl.'s Performance Evaluations).  Plaintiff also received a merit increase on June 14, 2012–a mere three weeks prior to suffering his stroke.  (Doc. 31-6, Pl.'s Merit Increase dated 6/14/12).

Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that the defendant wanted to fire plaintiff because of his age, took affirmative steps to facilitate plaintiff's termination and covered it up in the guise of a reduction in force.  As such, plaintiff has pointed to evidence in the record that could cause a reasonable jury to disbelieve the defendant's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason.  Burton, 707 F.3d at 430 (citation omitted).  Accordingly, defendant's motion for summary judgment regarding plaintiff's age discrimination claim will be denied.

15

## II.  Disability Discrimination[4]

Plaintiff also asserts a disability discrimination claim under the ADA.[5]
The ADA provides that an employer cannot discriminate against a qualified
individual with a disability because of his disability in regard to his employment.
42 U.S.C. § 12112(a).   A plaintiff may assert an ADA disability discrimination
claim with direct or circumstantial evidence.  Plaintiff argues that he can
establish disability discrimination under either method.

### A.  Direct Evidence

A plaintiff may demonstrate with direct evidence that the "decision
makers placed a substantial negative reliance on an illegitimate criterion in
reaching their decision."  Price Waterhouse v. Hopkins, 490 U.S. 228, 277
(1989) (O'Connor, J., concurring); Anderson v. Consol Rail Corp., 297 F.3d at
247-48 (adopting Justice O'Connor's concurrence).  Specifically, the evidence
must meet two requirements: (1) it must be connected to the adverse
employment action, and (2) it must "be strong enough to permit the factfinder

_____

4  Our analysis under the ADA applies equally to plaintiff's claims under
the PHRA.  Gafliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 n.2 (3d Cir.
2002) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.1996)).

5  Defendant concedes, solely for this summary judgment motion, that
"plaintiff was a disabled individual within the ADA, as he suffered a stroke
some eleven months prior to his termination."  (Doc. 26, Def.'s Br. in Supp.
Mot. for Summ. J. at 13).

to infer that a discriminatory attitude was more likely than not a motivating

factor in the [employer's] decision."  Anderson v. Wachovia Mortg. Corp., 621

F.3d 261, 269 (3d Cir. 2010) (quoting Walden v. Ga.-Pac. Corp., 126 F.3d 506,

515-16 (3d Cir. 1997)).  If the plaintiff produces direct evidence, the burden of

production shifts to the employer at trial.  Anderson v. Wachovia Mortg. Corp.,

621 F.3d at 269.  The employer must then establish that it would have taken

the adverse action even in the absence of a discriminatory motive.  Id.

In the instant matter, plaintiff asserts that defendant's CEO, McLaughlin,

spoke with several board members shortly after plaintiff's termination.

McLaughlin spoke with Kurt Masser and stated that he terminated plaintiff

because plaintiff "wasn't the same since his surgery."  (Doc. 35, Kurt Masser

Dep. at 7).  McLaughlin relayed his same concerns regarding plaintiff's mental

state to two other board members.  (Rosini Dep. at 15-16; Welsh Dep. at 7-9).

According to the plaintiff, McLaughlin's comments establish direct

evidence of disability discrimination for two reasons.  First, McLaughlin is the

decision maker who unilaterally terminated plaintiff's employment.  Second,

McLaughlin made these comments pertaining to plaintiff's mental health

contemporaneous with his decision to terminate plaintiff's employment.

Defendant argues these comments fail to permit the jury to infer that a

discriminatory attitude motivated McLaughlin's decision to terminate plaintiff

17

employment.  Specifically, McLaughlin's comments pertaining to plaintiff "not being the same" is a true statement because McLaughlin's "mental state" comments pertain to plaintiff knowingly and voluntarily carrying a firearm into his workplace after hours in violation of agency policy.[6]  McLaughlin, however, testified that the gun incident, in itself, would not have been the reason for terminating plaintiff's employment in March 2013.  (McLaughlin Dep. at 95).

Viewing this evidence in the light most favorable to plaintiff, a reasonable jury could infer that McLaughlin's held a discriminatory attitude toward plaintiff's disability and that his attitude was causally related to the decision to fire plaintiff.  As such, the court will deny defendant's motion for summary judgment on this issue.

### B. Circumstantial Evidence

Plaintiff also seeks to establish a disability discrimination claim with circumstantial evidence.  A plaintiff may use the burden shifting framework announced in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973) to establish disability discrimination with circumstantial evidence.

---

[6]  In late February 2013, plaintiff arrived at his workplace, after hours, to work on the agency's budget.  (Cook Dep., Ex. 18, HR Notation dated 3/13/13; Cook Dep., Ex. 20, Pl. Email dated 3/6/13).  Plaintiff brought with him an unloaded 9mm pistol in contravention of defendant's workplace policies.  (Cook Dep., Ex. 20, Pl. Email dated 3/6/13).

Smith, 589 F.3d at 691.

As previously stated, the ADA provides that an employer cannot discriminate against a qualified individual with a disability because of his disability in regard to his employment.  42 U.S.C. § 12112(a).  Where, as here, the complaining party relies upon circumstantial evidence to support a disability discrimination claim, the Third Circuit Court of Appeals has approved the use of the McDonnell Douglas burden shifting framework.  Shiring v. Runyon, 90 F.3d 827, 831 (3rd Cir. 1996).  First, a plaintiff seeking recovery pursuant to the ADA must establish a *prima facie* case of discrimination by demonstrating that (1) he's disabled within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.  Id.

Once the plaintiff establishes this *prima facie* case, the burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse employment decision."  Abramson v. William Patterson Coll., 260 F.3d 265, 281-82 (3d Cir. 2001).  An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes, 32 F.3d at 763.  "The employer need not prove that the tendered reason

19

**actually** motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. (emphasis in original).

Should the employer meet this burden, the burden of production shifts back to the plaintiff to establish that a jury "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.  The court will address each step of this burden shifting framework in turn.

### 1. Plaintiff's *prima facie* case

A plaintiff establishes a *prima facie* case of ADA disability discrimination when he demonstrates that: 1) he is disabled within the meaning of the ADA; 2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an otherwise adverse employment decision as a result of discrimination. Shiring, 90 F.3d at 831.  Defendant  does not dispute plaintiff is disabled within the meaning of the ADA, or that plaintiff suffered an adverse employment decision.  (Doc. 26, Def.'s Br. in Supp. Mot. for Summ. J. at 13).  Rather, defendant argues plaintiff could not perform the essential functions of the CFO position with or without reasonable accommodations.

### a. Qualified to perform essential functions

The second element of plaintiff's *prima facie* case requires him to establish that he is a "qualified individual".  The ADA defines this term as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The Third Circuit Court of Appeals divides this inquiry into two parts: (1) whether the person possesses "the requisite skill, experience, education and other job-related requirements" for the position; and (2) whether the individual is able to perform the essential functions of the position desired or held with or without reasonable accommodation.  Deane v. Pocono Med. Ctr., 142 F.3d 138, 145 (3d Cir. 1998) (quoting 29 C.F.R. § 1630.2(m)).

In the instant matter, defendant only asserts that plaintiff failed to possess the requisite skill, experience, education and other job related requirements for the CFO position at the time of his termination.  Specifically, plaintiff's poor performance evaluation in September 2012 and his decision to bring an unloaded 9mm handgun into work after hours establishes plaintiff's inability to perform as defendant's CFO.  Plaintiff counters that he is a qualified individual under the ADA because he is qualified to perform the essential functions of defendant's CFO position.  After a careful review, the court agrees

21

with plaintiff for three reasons.

First, plaintiff possesses a Bachelor of Science in Accounting and satisfactorily performed his job for twelve (12) years prior to his stroke in July 2012.  (Cook Dep. at 18; Doc. 31-5, Pl.'s Performance Evaluations).  Plaintiff also received a merit increase on June 14, 2012–a mere three weeks prior to suffering his stroke.  (Doc. 31-6, Pl.'s Merit Increase dated 6/14/12).  A reasonable jury could thus conclude plaintiff's educational history and past work performance demonstrate that he possesses the requisite skill, education and experience to perform as defendant's CFO.

Second, while the McLaughlin did state that plaintiff needs improvement regarding being open to constructive criticism and displaying enthusiasm in plaintiff's September 2012 employee evaluation, McLaughlin also rated plaintiff as surpassing expectations regarding competence in required job skills and understanding mastery of process, methods, systems and procedures.  (Doc. 24, Pl.'s Performance Review at 44-48).  Moreover, a jury may view the areas McLaughlin rated plaintiff as needing improvement in as trivial and unquantifiable or as pretext masking other, nefarious reasons for plaintiff's eventual termination.

Finally, McLaughlin "laughed about [the gun incident]" and told plaintiff that bringing a firearm into the workplace "wasn't a problem".  (Cook Dep. at

217, 226).  Additionally, McLaughlin testified that the gun incident, in itself, would not have been the reason for terminating plaintiff's employment in March 2013.  (McLaughlin Dep. at 95).  Viewing this evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff possessed the skill, experience and education to perform the essential functions of defendant's CFO position.  Ergo, genuine issues of material fact exist regarding whether plaintiff is a qualified individual under the ADA, and the court will employ the rest of the balancing test.

### 2.  Defendant's nondiscriminatory explanation

As previously stated, defendant asserts that it terminated plaintiff's employment for two reasons.  First, defendant terminated plaintiff because its funding declined by almost 45% between 2011 and 2014.  (SOF ¶ 4, Doc. 31-2, Ex. B, Termination Letter dated 3/12/13).  Second, plaintiff's poor performance contributed to his termination.  (Doc. 24, Pl.'s Performance Review at 44-48).  Thus, the record evidence establishes legitimate, non-discriminatory reasons for plaintiff's termination.

### 3. Pretext

Having established a legitimate reason for plaintiff's termination, the burden of production shifts back to plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is

merely a pretext for discrimination." Burton, 707 F.3d at 426; see also Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d at 364 (explaining that, "to defeat a motion for summary judgment, [the plaintiff] must show that the employer's articulated reason was a pretext for intentional discrimination").

Because defendant's arguments pertaining to pretext in plaintiff's disability discrimination claim are almost identical to those previously discussed regarding plaintiff's age discrimination claim, the analysis given above is equally applicable here. Thus, plaintiff has pointed to evidence in the record that could cause a reasonable jury to disbelieve the defendant's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the credibility of that reason. Burton, 707 F.3d at 430 (citation omitted). Ergo, defendant's motion for summary judgment regarding plaintiff's disability discrimination claim will be denied.

## III. Gender Discrimination[7]

Lastly, the court will address plaintiff's Title VII gender discrimination claim. Federal courts have also established a burden-shifting scheme for

---

[7] Because Title VII and PHRA gender discrimination claims are evaluated under the same standards, we only address plaintiff's Title VII gender discrimination claim. Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).

24

claims of employment discrimination under Title VII when no direct evidence of such discrimination exists: "the plaintiff must establish a *prima facie* case of discrimination.  If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection." Jones v. School Dist. of Phila., 198 F.3d 403, 408 (3d Cir. 1999) (quoting McDonnell Douglas Corp., 411 U.S. at 802). If the defendant meets that burden, the burden shifts back to the plaintiff, who must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination." Id.

### A.  Plaintiff's *prima facie case*

A plaintiff seeking to establish a *prima facie* case under Title VII must establish that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

The parties dispute whether plaintiff can satisfy the fourth element, namely whether the plaintiff can demonstrate that the circumstances of the

adverse action imply discrimination.  "The evidence most often used to establish this nexus is that of disparate treatment, whereby a plaintiff shows that he was treated less favorably than similarly situated employees who are not in plaintiff's protected class."  Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d at 366 (citing Iadimarco v. Runyon, 190 F.3d 151, 162 (3d Cir. 1999).

Plaintiff generally asserts female employees had greater opportunities for advancement and earning potential.  Plaintiff also claims the defendant required male employees to assist female employees, but female employees were not required to assist male employees.  The undisputed record, however, unequivocally establishes that the defendant did not treat similarly situated women differently.

For example, plaintiff admitted he earned more salary than any other female employee.  (Cook Dep. at 10-12).  Plaintiff also admitted that he advanced to the highest position in the financial department at defendant's CFO.  (Id.)  In short, the record is devoid of any evidence establishing that CSO treated similarly situated women differently.  Accordingly, plaintiff has failed to present a genuine issue of material fact from which a reasonable jury could conclude that the defendant treated him differently from similarly situated female employees.

As plaintiff has not satisfied his burden of establishing a *prima facie* case

26

of disparate treatment, the court need not examine the remaining steps of the

McDonnell Douglas framework.  Thus, the defendant's motion for summary

judgment will be granted with respect to plaintiff's claims for gender

discrimination based on disparate treatment under Title VII.

**Conclusion**

Based upon the above reasoning, defendant's motion for summary

judgment will be granted in part and denied in part.  The court will grant

defendant's motion for summary judgment on plaintiff's gender discrimination

claims.  The court will deny defendant's motion in all other respects.

Accordingly, remaining in the case will be the following claims: (1) Count I,

disability discrimination under the ADA; (2) Count II, age discrimination

pursuant to the ADEA; and (3) Count IV, disability and age discrimination

under the PHRA.  An appropriate order follows.

**Date:   02/09/2016**                              **s/ James M. Munley**
                                                    **JUDGE JAMES M. MUNLEY**
                                                    **United States District Court**